MORSE *v.* PORT HURON & DETROIT RAILROAD CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — INFERENCES—DUTY OF MASTER TO DISCLOSE RELEVANT MATTERS PECULIARLY WITHIN HIS KNOWLEDGE.

In proceedings under workmen's compensation act, failure of employer to fairly disclose relevant and illuminative matters peculiarly within his knowledge warrants inference that disclosure would not have been favorable to him.

2. SAME—CREDIBILITY OF WITNESSES FOR DEPARTMENT.

In proceedings under workmen's compensation act, credibility of witnesses is for department of labor and industry.

3. SAME—CUSTOM OF EMPLOYEE TO BANK EMPLOYER'S FUNDS AFTER HOURS.

In proceedings under workmen's compensation act for death of employee claimed to have been accidentally killed while on his way to bank after ordinary working hours to make deposit for employer, finding that employee made practice of depositing employer's funds after ordinary working hours frequently if not every Saturday night, *held,* justified by testimony.

Injuries to employee received while on the street, as arising out of and in the course of employment, see annotation in L. R. A. 1916A, 314; L. R. A. 1917D, 114; L. R. A. 1918F, 911.

4. Same—Evidence—Res Gestæ.

Testimony that employee's wife warned him that, if he had deposit to make that night he should be about it, and his answer that he had, was competent, not as evidence of his duty as employee to make deposits, but as showing his purpose in leaving the house on evening in question.

5. Same—Finding Justified by Facts.

That employee took employer's bank book and left his house on Saturday evening, after stating that he had deposit to make in bank, that he was next seen at point of accident, one block from bank, where he was walking across street intersection on direct route to bank, and that bank book and checks for deposit were found in his pocket, when taken in connection with his custom of making such deposits on Saturday evenings, *held*, to justify inference that he was on his way to make such deposit when injured.

6. Same—Decision of Department Final on Issue of Fact.

Employer's testimony that employee may have been on his way to pay insurance premium at time of injury resulting in death, instead of on his way to bank to make deposit of employer's funds as claimed by his wife, merely raised issue of fact for department of. labor and industry, whose decision thereon is final.

7. Same—Inferences as to Employee's Prescribed Duty in Absence of Disclosure by Employer.

Custom of employee in making Saturday night deposits in bank of employer's funds justified inference that such deposit at said time was prescribed duty, in absence of disclosure by employer as to actual instructions to employee in regard to making deposits.

8. Witnesses—Evidence—Matters Equally Within Knowledge of Deceased.

Testimony of employer's manager, who had hired deceased employee, as to his duties, hours of labor, instructions, and that his depositing funds on Saturday nights was not only no part of his duty but was against manager's express directions, was properly excluded as equally within knowledge of deceased.

9. Same—Matters Equally Within Knowledge of Deceased—Exception to Rule.

Permitting adverse party to testify in contradiction of witness in interest as to matters equally within knowledge of deceased

is confined to instances where both disqualified person and witness in interest have personal knowledge of same facts, and testimony of adverse party is permitted in reply to testimony of those facts by interested witness.

10. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENT OCCURRING ON STREET MAY ARISE OUT OF AND IN COURSE OF EMPLOYMENT.

If employment requires employee to go upon street, ordinary hazards thereof are incurred in course of employment, and injury therefrom arises out of employment.

11. SAME—STREET ACCIDENT.

Where employee was struck by automobile and fatally injured as he was crossing street on his way to bank to deposit employer's funds after hours, his injury arose out of and in course of his employment within meaning of workmen's compensation act.

Certiorari to Department of Labor and Industry. Submitted June 5, 1930. (Docket No. 35, Calendar No. 34,956.) Decided October 3, 1930.

Julia Morse presented her claim against the Port Huron & Detroit Railroad Company for compensation for the death of her husband while in defendant's employ. Defendant reviews an order awarding compensation by certiorari. Affirmed.

*Matthews, Hicks & Des Jardins,* for plaintiff.

*James E. Duffy, Jr. (James E. Duffy,* of counsel), for defendant.

FEAD, J.   On Saturday evening, February 2, 1929, Frank Morse was struck by an automobile as he was crossing Pine street on Military avenue in Port Huron, and died from his injuries. Award of compensation to his widow and children is reviewed on the contention that there was no competent evidence

that the accident arose in the course and out of his employment.

Defendant operates a terminal railroad in Port Huron. Morse had been its station agent for four years. The general offices of the company were in the second story of the station, which was over two miles from the business center of the city and ten blocks from a street car line leading downtown, on which the service was not good. Morse's duties were not detailed in the testimony, but one of them was to sometimes make deposit of company funds in the bank. Plaintiff claims he was on his way to make such deposit when injured.

At least one other employee also made deposits and used the same bank book. Whether others did, whether deposits by Morse covered only his own collections or included general funds, who made up the deposits, who indorsed the checks for the company, who had custody of the bank book, and from whom and how Morse obtained the book and funds for deposit were not shown. The failure of an employer to fairly disclose relevant and illuminative matters peculiarly within his knowledge warrants an inference that disclosure would not have been favorable to him.

The bank was open an hour on Saturday evenings. Mrs. Morse testified that for about a year before the accident, after they had discontinued the use of their automobile, Morse had made deposits for the company practically every Saturday night. On cross-examination she stated she had accompanied him to the bank at least once a month. An ex-roomer testified that for several months and up to the preceding October he had taken Morse to the bank nearly every Saturday night to make the deposits. On cross-examination he could not name specific dates

or even months, but was positive of the general practice. The credibility of these witnesses was for the board. The testimony would justify a finding that Morse made a practice of depositing company funds after ordinary working hours frequently on, if not every, Saturday night.

After supper on February 2d Mrs. Morse warned Morse that if he had a deposit to make that night he should be about it, and he said he had. This testimony was competent, not as evidence of his duty to make deposits, but as showing his purpose in leaving the house. 22 C. J. p. 453.

"Declarations made immediately preceding a particular litigated act, which tend to illustrate and give character to the act in question, are admissible as part of the *res gestæ*." 10 R. C. L. p. 978.

After this suggestion from his wife, Morse took the company bank book out of his coat pocket, transferred it to his overcoat pocket, and left his home. He was next seen at the point of accident, a block from the bank, where he was walking across the street intersection on the direct route to the bank. The bank book and checks for deposit were found in his pocket. These facts, taken in connection with his custom, justified the inference that he was on his way to make the deposit when hurt. Defendant's testimony indicating that he may have been on his way to pay an insurance premium merely raised an issue of fact for the board, whose decision thereon is final.

It may be assumed, as contended by defendant, that the custom of Morse to make Saturday night deposits was not sufficiently brought to the knowledge of the employer to justify a finding that, if it was not a prescribed duty, it nevertheless had been

approved and ratified as such by acquiescence of the employer in the practice. But, especially because Morse had the duty to make deposits and his actual instructions as to the time therefor were not disclosed by defendant, the custom justified the inference that the deposit on Saturday night was a prescribed duty. It was a substantial benefit to the employer in time saved. It involved no more street hazard than a day deposit. It was not unreasonable that the employer should want the deposits made rather than to carry them over Sunday. And there appeared no reason why Morse should have sacrificed his own hours of leisure and undergone the annoyance of standing in line to make the deposits as a regular practice if it had not been part of his job, required or approved by his employer. It was for the board to draw the inferences.

The testimony of the manager of defendant, who had hired Morse, as to his duties, hours of labor, instructions, and that his depositing funds on Saturday night was not only no part of his duty but was against the manager's express directions, was properly excluded as equally within the knowledge of the deceased. 3 Comp. Laws 1915, § 12553; *Hanna* v. *Michigan Steel Castings Co.*, 204 Mich. 139; *Zoladtz* v. *Detroit Auto Specialty Co.*, 206 Mich. 349. The testimony of other employees who would have been competent was not offered. The exception announced in *Rock* v. *Gannon Grocery Co.*, 246 Mich. 545, that an adverse party may testify in contradiction of a witness in interest, has no application. It is confined to instances where both the disqualified person and the witness in interest have personal knowledge of the same facts, and testimony of the adverse party is permitted in reply to testimony of those facts by the interested witness. Mrs. Morse

did not testify to any instructions given by the manager to Morse, nor was it shown that they were given in her presence.

Defendant contends that the accident did not arise out of Morse's employment because the street hazard was not peculiar to his work but was common to the neighborhood and a risk to which all persons in the street were subject. The nebulosity originally enveloping the rule invoked has been considerably dissipated by later cases. We need not spend the time to trace the change. It is sufficient to say that it is the rule in this State that if the employment requires an employee to go upon the public street, the ordinary hazards of the street are incurred in the course of the employment and an injury therefrom arises out of the employment. *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich. 435 (L. R. A. 1917A, 252); *Stockley* v. *School District,* 231 Mich. 523; *Favorite* v. *Kalamazoo State Hospital,* 238 Mich. 566; *Widman* v. *Murray Corporation,* 245 Mich. 332. To reach the bank to make the deposit, Morse was required to pass along the city streets and to incur the traffic risks thereon. The injury arose out of and in the course of his employment. *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462.

In this case the board found it necessary to refer the cause back to the deputy commissioner for a further hearing. We trust that, in addition to the formal order made, the board at least intimated that public servants owe courtesy to members of the public having business before them.

The award is affirmed.

BUTZEL, CLARK, MCDONALD, POTTER, SHARPE, and NORTH, JJ., concurred with FEAD, J.

WIEST, C. J. (*concurring in affirmance*). I concur in the result. The employee was in the street, about the business of his employer, therefore the accident, incident to a hazard in using the street, arose out of and in the course of his employment.

Beyond deciding the case before us, I do not care to be committed.